**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| STEPHEN L. LaFRANCE PHARMACY, INC. and STEPHEN L. LaFRANCE HOLDINGS, INC., individually and on behalf of: all others similarly situated,     *plaintiffs*, v. | : : : : | **OPINION** <br><br> Civil Action No. 09-1507 (KSH) |
| UNIMED PHARMACEUTICALS, INC., SOLVAY PHARMACEUTICALS, INC., WATSON PHARMACEUTICALS, INC., PAR PHARMACEUTICALS, INC., and PADDOCK LABORATORIES, INC.     *defendants*. | : : : : : | |

------------------------------------

| | | |
|---|---|---|
| FRATERNAL ORDER OF POLICE, FORT LAUDERDALE LODGE 31, INSURANCE TRUST FUND, individually and on behalf of all others similarly situated,     *plaintiff*, v. | : : : | <br><br><br><br> Civil Action No. 09-1856 (KSH) |
| UNIMED PHARMACEUTICALS, INC., SOLVAY PHARMACEUTICALS, INC., WATSON PHARMACEUTICALS, INC., PAR PHARMACEUTICALS, INC., and PADDOCK LABORATORIES, INC.     *defendants*. | : : : | |

------------------------------

| | | |
|---|---|---|
| RAYMOND SCURTO, individually and on behalf of all others similarly situated,     *plaintiff*, v. | : : : | <br><br> Civil Action No. 09-1900 (KSH) |

UNIMED PHARMACEUTICALS, INC.,
SOLVAY PHARMACEUTICALS, INC.,          :
WATSON PHARMACEUTICALS, INC.,
PAR PHARMACEUTICALS, INC., and         :
PADDOCK LABORATORIES, INC.             :
      *defendants*.                          :

------------------------------

**Katharine S. Hayden, U.S.D.J.**

### I.     Introduction

The three cases captioned above have been consolidated for purposes of discovery. Before the Court are the appeals filed by the captioned plaintiffs from Magistrate Judge Patty Shwartz's ruling that granted defendants' joint § 1404(a) motions to transfer these cases to the Northern District of Georgia. The appeals were filed after Judge Shwartz denied reconsideration.

All plaintiffs are consumers of the synthetic testosterone product called AndroGel. They have sued the same defendant companies, alleging that defendants improperly resolved patent infringement litigation among themselves over rights to AndroGel by entering into settlement agreements that violate antitrust law. As a result, plaintiffs claim they paid "artificially inflated prices" for the product.

Before Judge Shwartz made her ruling, plaintiffs had filed a § 1407 motion before the Judicial Panel on Multi-District Litigation ("JPML") seeking to create a Multidistrict Litigation ("MDL") in this venue. Because the transfer order effectively moots plaintiffs' § 1407 motion, plaintiffs have asked this Court to stay any ruling that affirms Judge Shwartz, so that the JPML may determine whether New Jersey is the proper jurisdiction for the centralized docket of each of the private AndroGel cases.

**II.        Facts and Procedural History**

The following background facts, which – unless otherwise noted -- are taken from Judge Shwartz's opinion delivered on the record June 2, 2009, are not disputed.  The disputed issues are legal ones, arising out of the procedural course taken by the various lawsuits against the defendants based on claims similar to the ones these plaintiffs have alleged.

Plaintiff Stephen LaFrance Pharmacy is a subsidiary of plaintiff Stephen L. LaFrance Holdings, Inc. (collectively, "LaFrance plaintiffs"), a holding company located in Arkansas.  (R. at 2:15-16.)  Plaintiff Fraternal Order of Police, Fort Lauderdale Lodge 31, Insurance Trust Fund Trust is a government-run health insurance entity established under Florida law pursuant to a resolution of the City of Fort Lauderdale, Florida.  Plaintiff Raymond Scurto is an Illinois resident and a direct purchaser of AndroGel.  He seeks to represent a class of AndroGel purchasers nationwide.

Defendant Unimed, as partners with French pharmaceutical company Bessins Incovesco, developed AndroGel, a gel used to treat low testosterone levels for which United States Patent No. 6-503-894 ("'894 Patent") was issued on January 7, 2003.  In January 2003, Unimed listed the '894 patent in the Food and Drug Administration's "Orange Book."

Unimed is a wholly-owned subsidiary of co-defendant, Solvay, a Georgia corporation which maintains its principal place of business in Georgia.  Defendants Watson, Par, and Paddock manufacture and market generic versions of brand drugs.  (R. at 3:18-20.)  Watson is a Nevada corporation with offices in both California and New Jersey.  Par is a Delaware corporation that maintains its principal place of business in New Jersey.  Paddock is a pharmaceutical company, which is incorporated in and maintains its principal place of business in Minnesota.  In May 2003,

Watson and Paddock filed Abbreviated New Drug Applications to seek approval to market generic versions of AndroGel.

In August 2003, Unimed and Bessins Incovesco, the partner patent-holders of AndroGel, sued Watson and Paddock for patent infringement in the Northern District of Georgia. United States District Judge Thomas W. Thrash presided over the case for three years, where he oversaw discovery, claim construction briefing, and motions for partial summary judgment. During the pendency of the litigation, Unimed and Watson participated in multiple telephone conferences, a settlement meeting in Houston, Texas, and a follow-up meeting in Atlanta, Georgia attended by Solvay and Watson executives. On September 13, 2006, Unimed and Watson executed a final settlement release agreement and stipulation of dismissal. On September 15, 2006, Judge Thrash entered the stipulation of dismissal, which provided that the Northern District of Georgia would retain jurisdiction over the settlement. Unimed and Watson also executed a separate agreement whereby Watson promised to market AndroGel to urologists.

Unimed, Paddock, and Par also negotiated a settlement agreement that was reached through a series of telephone meetings and four separate in-person conferences held at Unimed Headquarters in Marietta, Georgia and attended by executives from Solvay, Paddock, and Par. On September 13, 2006, Unimed, Paddock, and Par executed a final settlement release agreement, a consent judgment, and an order of permanent injunction. The consent judgment and order of permanent injunction reserved jurisdiction to Judge Thrash over any future dispute or subsequent litigation between the parties. The permanent injunction order was entered on September 15, 2006, in the Northern District of Georgia. These parties also executed a co-promotion agreement that allowed Par to market AndroGel to primary care physicians and a backup manufacturing and supply agreement under which Paddock would serve as a backup manufacturer of the product.

Under both settlements, Solvay agreed to compensate the generic drug manufacturers if they deferred marketing the generic AndroGel until 2015.

The Federal Trade Commission ("FTC") began an investigation for antitrust law violations by defendants, in the course of which the agency deposed 21 current or former employees of defendants in Georgia and elsewhere. Eight of those depositions took place in New Jersey.

Ultimately, the FTC and the California Attorney General sued Watson, Paddock, Par, and Solvay on grounds of unfair competition and antitrust violations in the Central District of California. One month later, in February 2009, these same parties, along with Unimed, were sued by a series of plaintiffs in three separate private actions for violating Federal antitrust laws through their settlement agreements. These lawsuits were also filed in the Central District of California.

On February 27, 2009 and March 2, 2009, joint motions were filed by the defendants in the public and private California cases to transfer them to the Northern District of Georgia. The motions were granted by District Judge Mariana Pfaelzer, resulting in the transfer of each case to Georgia on April 8, 2009.

The appeals before this Court revolve around the three AndroGel-related lawsuits filed in the District of New Jersey, collectively referred to as "the New Jersey cases." The New Jersey cases closely resemble the California private actions because they also allege that defendants' settlements violated antitrust laws. On March 31, 2009, the LaFrance plaintiffs filed the first of these cases. The Fraternal Order of Police Fort Lauderdale Lodge, 31 Health Trust and Raymond Scurto followed on April 17, 2009 and April 21, 2009, respectively. On April 3, 2009, five days before the California cases were transferred to Georgia, the LaFrance plaintiffs also filed their aforementioned motion before the JPML pursuant to 28 U.S.C. § 1407 seeking to centralize each

of the pending private causes of action and establish the District of New Jersey as the venue for a MDL.

On May 4, 2009, save for granting leave to file amended complaints, Judge Thrash stayed proceedings in the private actions filed in the Northern District of Georgia, pending the JPML decision. Also on May 4, 2009, Judge Thrash granted the FTC's motion to file an amended complaint and reset discovery deadlines pending the JPML decision. (R. at 8:16-17.) Notably, § 1407(g) states that § 1407 "shall [not] apply to any action in which the United States is a complainant arising under [] antitrust laws," therefore, the JPML has no jurisdiction over the FTC case.

As discussed, on May 8, 2009, defendants filed joint motions to transfer each of the New Jersey cases to the Northern District of Georgia. On May 18, 2009, a group of unrelated plaintiffs filed another antitrust class action suit against the defendants, based on the same settlements, this time in the District of Minnesota.[1] On June 10, 2009, defendants filed a § 1404(a) motion requesting transfer of the District of Minnesota cases to the Northern District of Georgia.

After Magistrate Judge Shwartz ruled, the JPML denied as moot plaintiffs' § 1407 motion for centralization and transfer of all private AndroGel cases to the District of New Jersey. *See In re AndroGel Antitrust Litigation*, MDL No. 2060, 622 F.Supp.2d 1382, 1382 (J.P.M.L. 2009). On June 8, 2009, the JPML denied without prejudice reconsideration of the decision.

On June 17, 2009, yet another group of plaintiffs filed suit in the Middle District of Pennsylvania against defendants, alleging the same antitrust violations.[2] The Minnesota plaintiffs

---

[1]   The Minnesota action is captioned, *United Food and Commercial Workers Unions and Employers Midwest Health Benefits Fund v. Unimed Pharmaceuticals, Inc. et al.*, Civ. No. 09-1168 (D. Minn.).

[2]   The Middle District of Pennsylvania case is styled *Rite Aid Corp., et al. v. Unimed Pharmaceuticals, Inc. et al.*, 1:09-cv-1153 (Md. Pa.).

and the Pennsylvania plaintiffs each filed petitions to the JPML, one seeking centralization in Minnesota and the other in the Middle District of Pennsylvania.

On June 9, 2009, plaintiffs filed identical motions for reconsideration in each transferred case arguing that the subsequent procedural developments were issues of newly discovered evidence sufficient to cause Judge Shwartz to reconsider her initial transfer decision. (D.E. 46.) Judge Shwartz denied their applications by order on June 24, 2009. (D.E. 57.)

### III.     Standard of Review of Appeal

A magistrate judge's ruling to transfer a case to another district is not a final ruling on the merits of the case. Accordingly, the Court will treat the motions under § 1404(a) that Judge Shwartz decided as non-dispositive, and will apply the standard of review of her ruling that is set forth in L. Civ. R. 72.1(c)(1), which holds that in reviewing a magistrate judge's decision on a non-dispositive motion, the Court may not set aside any portion unless the party filing the appeal shows that the decision was clearly erroneous or contrary to law.

The term "contrary to law" is self-evident and, in any event, plaintiffs are not challenging the law that Judge Shwartz applied, *see infra*. Rather, they argue that Judge Shwartz's findings were "clearly erroneous," a label given to a decision when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Gypsum Co.*, 333 U.S. 364, 395 (1948); *accord Dome Petroleum Ltd. v. Employers Mut. Liab. Ins. Co.*, 131 F.R.D. 63, 65 (D.N.J. 1990).

### IV.     Discussion

Plaintiffs raise the following arguments: (1) Judge Swartz's ruling created procedural confusion; and (2) she based her ruling on inaccurate assumptions.

Statutory law under 28 U.S.C. § 1404(a) specifies three factors a court must consider when determining whether to transfer a matter: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice. The Third Circuit has enlarged the inquiry and directed that a court balance "all relevant factors" to decide whether a litigation "would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). In *Jumara*, the court enumerated 12 relevant factors, made up of six private party interests and six public interests.

The private factors are: (1) the plaintiff's choice of forum; (2) the defendant's preference of forum (3) whether the claim arose elsewhere; (4) the convenience of the parties' financial and physical conditions; (5) the convenience of the expected witnesses; and (6) the location of books and records. *Id.* at 879. The public considerations are: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding controversies; (5) the public policies of the fora; and (6) in diversity cases, the familiarity of the trial judge with the applicable state laws. *Id.* at 879–80.

Plaintiffs argue that although it was an attempt to avoid "an inefficient use of judicial resources" (R. at 33:11–12), Judge Shwartz's ruling had the unintended effect of "result[ing] in such inefficiencies." (Pls.' Br. 11.) Plaintiffs' reasoning focuses on their § 1407 JPML motion seeking the establishment of a multi-district litigation in the District of New Jersey. Plaintiffs point out that because Judge Shwartz ruled the way she did, the plaintiffs in each of the other AndroGel cases were compelled to file new § 1407 motions. Plaintiffs argue that further "inefficiency," which they assert Judge Shwartz's "seemingly innocuous" § 1404 order "spawned," was created by the

subsequent § 1404 motions filed by defendants in the District of Minnesota and one they anticipate will be filed in Pennsylvania. (Pls.' Br. 12.)

Plaintiffs' argument addresses only one *Jumara* interest. In fact, Judge Shwartz scrutinized how transferring the cases would affect *each* relevant *Jumara* private and public interest. For instance, in addition to the "ease of trial" interest, Judge Shwartz evaluated and considered: (1) the enforceability of judgment; (2) the administrative difficulty in the two fora resulting from court congestion; (3) the convenience of witnesses; (4) the location of documents; and (5) the plaintiffs' choice of forum.

As to the effect her ruling would have on "practical considerations that could make [] trial easy, expeditious, or inexpensive," Judge Shwartz gave several reasons why the Northern District of Georgia is a more appropriate forum, noting that Georgia is: (1) the setting of the events giving rise to the instant actions; (2) the home of some defendants; (3) the location of a multitude of documents and witnesses; and (4) the transferee court for the Central District of California cases, which, like the instant cases, have allegations of antitrust violations based on the same alleged conduct. Reviewing her analysis, this Court cannot find that her findings and legal conclusions were clearly erroneous.

As to their argument that Judge Shwartz made incorrect assumptions, plaintiffs assert: (1) that she was wrong in characterizing Judge Thrash as less burdened by MDL cases than this Court; (2) that she was mistaken in finding there is no conclusive evidence in the record that any defendant other than Par maintained corporate offices in New Jersey; and (3) she erred in concluding that if the New Jersey cases were not transferred, there would be AndroGel-related cases pending in both Georgia and New Jersey. (R. at 33:8-12.)

The Court is satisfied that Judge Shwartz was not relying on fatally incorrect assumptions. She indicated that there were two MDL matters pending before Judge Thrash and one before this Court. (*See* Order Denying Mot. for Recons. 4, n. 2.) The *Jumara* balancing test requires that the court consider the "relative administrative difficulty in *the two fora* resulting from court congestion," not just the respective dockets of the judges involved. *See Jumara*, 44 F.3d at 879 (emphasis added). Individual courts within a given district have the ability to reallocate cases from one judge to another, so the district's docket is the more appropriate indicator of a district judge's comparative workload. Moreover, Judge Shwartz noted that the District of New Jersey carried 24 pending MDL cases, the second highest number of all the district courts. (*See* Order Denying Mot. for Recons. 4, n. 2) (*citing* UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION, PENDING MDL DOCKETS BY DISTRICT 7 (May 11, 2009), http://www.jpml.uscourts.gov/Docket_Information/PendingMDL-May-09.pdf.)

On plaintiffs' second point, Judge Shwartz found it unlikely that a significant number relevant documents are located in New Jersey because "[t]he agreement was negotiated in places other than New Jersey and no conclusive evidence in the record indicates that any of the defendants, with the exception of Par, maintain corporate offices in New Jersey." (R. at 30:21-25.) Even adding in another defendant, Watson, which maintains offices in New Jersey, Judge Shwartz's conclusion is still sound. She noted that two defendants were headquartered in Georgia; observed that the parties reached settlement of the underlying litigation outside of New Jersey; and she cited Judge Pfaelzer's finding that "events surrounding the settlements, the witnesses, and sources of proof in this are concentrated in the Northern District of Georgia." (R. at 31:2-5) (*citing F.T.C. v. Watson Pharmaceuticals, Inc.*, 611 F.Supp.2d 1081 (C.D.Cal. 2009)). As such, for purposes of her *Jumara* interest balancing, Judge Shwartz had adequate support for her finding.

Finally, plaintiffs assert that Judge Shwartz incorrectly found that there would be pending litigation in both Georgia and New Jersey if defendants' motions to transfer were denied. (Pls.' Br. at 16.) Plaintiffs argue that if the Court rules against transfer, the JPML may create a MDL in New Jersey, centralizing all of the private Georgia cases with the instant cases and leaving only one district with pending private AndroGel cases. Additionally, plaintiffs point out that the FTC has stated its intention to seek transfer of the public AndroGel case (which is not affected by any JPML action) from the Northern District of Georgia to any district where an AndroGel MDL exists. Plaintiffs reason that if these events occur in the future, it would effectively ensure that all AndroGel cases proceeded in one forum, contrary to Judge Shwartz's finding.

By rule, Judge Shwartz had full discretion to rule on the adequacy and appropriateness of § 1404(a) transfer motions before her, and was only obligated to consider the pending § 1407 motion for purposes of determining whether it affected any of the enumerated *Jumara* public or private interests. *See* Rules of Procedure of the Judicial Panel on Multidistrict Litigation, R.P. 1.5, 199 F.R.D. 425, 427 (2001). In assessing the implications transfer would have on the *Jumara* interest of "practical considerations that could make trial easy, expeditious, or inexpensive," Judge Shwartz contemplated the pending § 1407 motion but refused to assume two developments that plaintiffs insist will occur. She was solidly within her discretion to do so.

Based on the foregoing, the Court finds that plaintiffs have failed to meet their burden of showing that Magistrate Judge Shwartz's transfer order of the New Jersey cases to the Northern District of Georgia was clearly erroneous. Accordingly, their appeals from the transfer order are denied.

It is well established that a district court's power to stay a proceeding is incidental to the court's ability to dispose of cases to promote their fair and efficient adjudication. *See United States*

*v. Breyer*, 41 F.3d 884, 893 (3d Cir. 1994).  To determine whether to grant a stay, a court must consider if a stay would prejudice the non-moving party and if it would further the interest of judicial economy.  *Ford Motor Credit Co. v. Chiorazzo*, 529 F.Supp.2d 535, 542 (D.N.J. 2008).  The party seeking a stay must demonstrate a "clear case of hardship or inequity in being required to go forward."  *Landis v. North American Co.*, 299 U.S. 248, 255 (1936).

In arguing for the appropriateness of a stay of a decision affirming Judge Shwartz, plaintiffs rely on dicta in *Bechtel Corp. v. Laborers' International Union*, stating that, in its discretion, "a court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues."  544 F.2d 1207, 1215 (3d Cir. 1976).  Plaintiffs argue that if this Court decides to wait for "the JPML decision [it] will be dispositive of the issue of the situs of all the private AndroGel cases."  (Pls.' Br. 17.)  In relying on the dicta in *Bechtel*, plaintiffs ignore the explicit language of JPML Rule of Procedure 1.5,

> The pendency of a motion . . . before the [JPML] concerning transfer . . . of an action pursuant to 28 U.S.C. § 1407 *does not affect* or suspend orders and pretrial proceedings in the district court in which the action is pending and does not in any way limit the pretrial jurisdiction of that court.

(Emphasis added.)

Under this Rule, Judge Shwartz was free to – indeed was required to – consider the landscape before her and analyze it, which is what she did.  Moreover, as a practical matter, Judge Shwartz reasoned in her opinion denying reconsideration that "[i]f the JPML believed creation of an MDL is warranted, it can still create one through the motion the Minnesota and Pennsylvania plaintiffs have filed."  (Order Denying Mot. for Recons. 5.)

Plaintiffs do not satisfy the burden placed on them, as parties seeking a stay, of establishing a clear case of hardship or inequity.  Instead, the circumstances demonstrate that the magistrate

judge ruled on the facts before her, applied the correct law, and no reasons exist to interfere with the consequences of her ruling. Accordingly, the motion to stay is denied.

**V.      Conclusion**

For the foregoing reasons, the Court **affirms** Judge Shwartz's decision to transfer this case to the Northern District of Georgia, and **denies** plaintiffs' request for a stay of the proceedings. An appropriate order will be entered.

/s/  Katharine S. Hayden

Hon. Katharine S. Hayden
United States District Judge

Date: September 30, 2009